RENDERED: OCTOBER 31, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0285-MR

KENNETH RAY BOARMAN, JR.;
CARL JOE BOARMAN; AND
KENSON FARMS, INC.                                    APPELLANTS


                    APPEAL FROM DAVIESS CIRCUIT COURT
v.                  HONORABLE DAVID C. PAYNE, JUDGE
                    ACTION NO. 23-CI-01203


MATTHEW A. BOARMAN;
RUSSELL WILKEY; AND
STEPHEN P. BOARMAN                                    APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; CETRULO AND MOYNAHAN,
JUDGES.

CETRULO, JUDGE: Brothers Kenneth Ray Boarman Jr. ("Ray") and Carl Joe

Boarman ("Joe") appeal orders of the Daviess Circuit Court appointing a receiver

for their family farm. Finding no cause for reversal, we affirm.

## FACTS & PROCEDURAL BACKGROUND

Kenneth Raymond Boarman, Sr. ("Senior") started Kenson Farms[1] in Utica, Kentucky, but eventually turned over management and control of the business to his four sons: Appellants Ray and Joe, and Appellees Matthew A. Boarman ("Matt") and Stephen P. Boarman ("Steve"). While the brothers initially worked the family farm together successfully, their personal and professional relationships disintegrated.

In December 2023, Matt and Steve filed suit against Joe and Ray to dissolve and wind up Kenson Farms. Matt and Steve alleged that in 2021, Joe and Ray took exclusive control of Kenson Farms, excluded them as partners/owners/ managers, and moved farm proceeds to a new bank account (that was under Joe and Ray's exclusive control). Further, Matt and Steve alleged Joe and Ray were mismanaging the family farm. For instance, they stated that Kenson Farms had no accountant or bookkeeper (despite the farm generating millions of dollars in revenue each year), the family farm's 401K plan was out of compliance, and its tax returns were tardy.

---

[1] According to the original complaint, Kenson Farms was made up of Kenson Family Farms Partnership, Kenson Farms, LLC, and Kenson Farms, Inc. Matt and Steve sought to dissolve and wind up all three business entities, and the orders on appeal appointed a receiver to oversee all three business entities. However, the only entity named as a party to this appeal is Kenson Farms, Inc. As will become apparent, this discrepancy is not outcome determinative. For clarity and simplicity, we will refer to the business entities collectively on appeal as "Kenson Farms" and/or "the family farm."

In response, Joe and Ray alleged that Matt and Steve had abandoned the family farm and started new businesses, in part, with improperly obtained family farm funds. More specifically, Joe and Ray claimed their signatures had been forged on various financial agreements and checks and accused Matt of embezzling farm funds and Steve of improperly selling farm equipment. These actions forced Joe and Ray to move proceeds from the family farm into a new bank account in only their names and exclude Matt and Steve from the farm management.

In September 2024, Matt and Steve moved the Daviess Circuit Court to appoint a receiver for Kenson Farms. Shortly thereafter, on November 26, the Daviess Circuit Court heard arguments during its motion hour.

Matt and Steve argued the family farm needed a receiver "sooner than later" because without a receiver, their interests were in danger of being lost, removed, or materially injured by the "ongoing intentional mismanagement and wasting" of the family farm's assets by Joe and Ray. To the contrary, Joe and Ray opposed the appointment and denied any allegation of waste or mismanagement. They argued the farm was successful and well managed, and as there were other

less invasive remedies available to quell their brothers' concerns, such as an injunction,[2] appointment of a receiver was not necessary or legally proper.

During the hearing, the court expressed concern about the brothers' inability to work together and the mutual allegations of both parties moving farm proceeds out of reach by the other side. The court stated:

> It appears the parties are unable to operate [together]. . . . I don't know about farm equipment, I know farm land's not going to go anywhere, but proceeds can wander around various and sundry places. I definitely think a receiver is going to be necessary, but we need to set this for a hearing to determine who should be the receiver.

At the end of the hearing, the court signed the tendered order granting the motion to appoint a receiver but set a hearing for the following month on December 17 to determine who would be the receiver ("November Necessity Order").

As the prior judge retired, a different judge presided over the December 17 hearing. To begin this hearing, the court stated its understanding was that the prior judge already determined a receiver was necessary, but now it must determine *who* should be the receiver. Matt and Steve agreed with the court's understanding of the current state of the case, but Joe and Ray repeated their argument that a receiver was not legally proper nor factually warranted. The court

---

[2] Joe and Ray did not make any argument as to the *specifics* of a possible injunction. Instead, they shifted the burden to Matt and Steve to demonstrate an injunction could *not* be utilized.

determined that reconsideration was not appropriate, and the parties should present their nominees for receivership. The court heard only oral arguments and did not allow the parties to present witnesses.

Matt and Steve presented Attorney Russell Wilkey ("Wilkey") as their recommendation for receiver. They asserted Wilkey previously worked as a bankruptcy trustee (a position similar to the receivership in the case *sub judice*), and was experienced with the relevant legal concerns, winding down process, and farm management. The court was familiar with Wilkey and his legal practice.

Joe and Ray opposed Wilkey and requested the court appoint Senior. They argued that as Senior started Kenson Farms and remained partial owner, he was perfectly situated to keep the businesses running smoothly and for less cost than Wilkey. However, Matt and Steve opposed Senior's appointment. They stated that as this was a "family dispute . . . putting another family member, in the midst of family members, will not contribute to alleviating the issues of needing someone who is neutral and has no ties to the parties." Also, while Matt and Steve contested Senior's claim of partial ownership, they pointed to Senior's belief in such and argued that having a purported owner as receiver presented conflict of interest concerns. The court acknowledged that Senior was knowledgeable and vested in the family farm, but not appropriate as receiver. The court stated that as Senior was a potential party, he had a conflict of interest and appointed Wilkey.

On December 19, Joe and Ray moved to alter, amend, or vacate the November Necessity Order. A few days later, December 23, the court entered a written order appointing Wilkey as receiver ("December Designation Order").

On January 21, 2025, the court heard arguments on Joe and Ray's motion to alter, amend, or vacate. Joe and Ray asserted that the court's finding that a receiver was necessary was not based on sufficient evidence, required an evidentiary hearing, and argued Matt and Steve did not meet their burden of showing the family farm was being mismanaged. Conversely, Matt and Steve argued the court's finding was based on the admissions by the parties through written pleadings and oral arguments, and any request to vacate was untimely.

The court agreed that a finding of whether a receiver was necessary should be based upon evidence, but the court (the prior judge) "thought admissions were made by the parties in court that would justify the evidentiary finding without an evidentiary hearing." Three weeks later, on February 11, 2025, the court entered a written order denying Joe and Ray's motion. The court stated that while Kentucky Revised Statute ("KRS") 425.600 governs the appointment of receivers, it "offers no guidance as to what type of evidentiary hearing, if any, is required." Further, the court stated,

> In this matter, both [Matt and Steve] and [Joe and Ray] have made mutual and opposing allegations that the others have engaged in either mismanagement or conversion of business assets to the detriment of themselves. . . . This

Court believes that the various judicial admissions by the parties establish sufficient evidentiary grounds for a finding that a receiver should be appointed.

Joe and Ray appealed.

## ANALYSIS

On appeal, Joe and Ray argue the circuit court erred in denying their request for an evidentiary hearing and erred in appointing a receiver. They assert there was not sufficient evidence to support the finding that a receiver was necessary, and Matt and Steve did not meet their burden.[3] Conversely, Matt and Steve argue the appeal is not timely and, alternatively, the circuit court did not abuse its discretion in appointing a receiver.

### A. The appeal was timely.

Timeliness of an appeal is a question of law we review *de novo*. *Cabinet for Health & Fam. Servs. v. D.W.*, 680 S.W.3d 856, 860 (Ky. 2023) (citations omitted). Similarly, "[w]hen construing a statute, this Court is presented with an issue of law which we address *de novo*." *Jefferson Cnty. Bd. of Educ. v. Fell*, 391 S.W.3d 713, 718 (Ky. 2012) (citation omitted).

---

[3] Additionally, Joe and Ray assert caselaw prohibits a receivership appointment when other remedies at law exist, and as an injunction was possible, the appointment was legally improper. However, Joe and Ray merely state an injunction was possible without further explanation, and, inconsistent with the law they cited, shift the burden onto Matt and Steve to show an injunction was *not* possible. As this argument is undeveloped, we need not discuss it further.

When interpreting a statute, we must "look first to the plain language of a statute and, if the language is clear, our inquiry ends." *Maysey v. Express Servs., Inc.*, 620 S.W.3d 63, 71 (Ky. 2021) (citing *Univ. of Louisville v. Rothstein*, 532 S.W.3d 644, 648 (Ky. 2017)). KRS 425.600(1) states, "[t]he order of a court appointing or refusing to appoint a receiver, shall be deemed a final order for the purpose of an appeal[.]" Matt and Steve argue that rule applies to the first order – the November Necessity Order – which made the original finding a receiver was necessary, but we do not agree. The December Designation Order is the "order of a court appointing . . . a receiver," and that order is the interlocutory order that starts the time-to-appeal clock. *See id.* The plain language of the statute is unambiguous and clearly states the order *appointing a receiver* is appealable. KRS 425.600(1).

Moreover, the receivership issue does not reach *finality* until the court *names* a receiver. Stated another way, until a receiver is named, the receivership issue is not complete, and therefore, not ripe for appellate review. This interpretation of KRS 425.600 is consistent with our understanding of interlocutory appeals and finality. "[I]f an order entered in a cause does not put an end to the action, but leaves something further to be done before the rights of the parties are determined, it is interlocutory and not final." *Hubbard v. Hubbard*, 197 S.W.2d 923, 924 (Ky. 1946) (citation omitted). Generally, this Court has jurisdiction only

-8-

over *final* judgments and orders issued by our circuit courts. KRS 22A.020(1). "A final or appealable judgment is a final order adjudicating all the rights of all the parties in an action or proceeding . . . ." Kentucky Rule of Civil Procedure ("CR") 54.01. Stated another way, "[a] final adjudication is a judgment that conclusively determines the rights of the parties in regard to that particular phase of the proceeding." *Watson v. Best Fin. Servs., Inc.*, 245 S.W.3d 722, 726 (Ky. 2008) (citation omitted). If there is an action with multiple claims and/or involving multiple parties, an interlocutory order may become appealable if it adjudicates all the rights and liabilities of the parties on that one issue (while reserving on other issues). CR 54.02. While CR 54.02 does not strictly apply here, the principles are persuasive and useful: a specific issue needs to reach a conclusion before appellate review is appropriate.

Here, KRS 425.600 specifically allows a party to appeal an order appointing a receiver; an appealable order did not result until the court named a receiver, thereby finalizing that specific issue. The circuit court appointed a receiver on December 23, 2024; Joe and Ray timely filed a motion to alter, amend, or vacate 10 days later, thereby tolling the time for filing an appeal. *See* CR 59.05; *see also* Rule of Appellate Procedure ("RAP") 3(E)(2) ("the time to file an appeal runs for all parties from the entry of the order disposing of the last [CR 50.02, CR 52.02, or CR 59] motion"). The order denying their motion was entered on

-9-

February 11, 2025, thus making March 13, 2025 the deadline to file an appeal. *See* RAP 3(A)(1). Joe and Ray timely filed their notice of appeal on March 4, 2025.

## B. Appointment of a receiver was not an abuse of discretion.

The appointment of a receiver has long been within the sound discretion of the trial court. *Woods v. Consol. Newspapers*, 122 S.W.2d 112, 113 (Ky. 1938); *Douglass v. Cline*, 75 Ky. 608, 622 (1877). Accordingly, we will not disturb the circuit court's decision unless it "was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citation omitted).

In relevant part, KRS 425.600 states:

> On the motion of any party to an action who shows that he has, or probably has, a right to, a lien upon, or an interest in, any property or fund, the right to which is involved in the action, *and that the property or fund is in danger of being lost, removed or materially injured*, the court may appoint a receiver . . . during the pendency of the action, and may order and coerce the delivery of it to him.

KRS 425.600(1) (emphasis added).[4]

---

[4] Again, Kenson Farms, Inc., a corporation, is the only named business entity on appeal. Both below and on appeal, the parties all focus on KRS 425.600, the general receivership statute, for the circuit court's authority to appoint a receiver. However, KRS 271B.14-320 more specifically discusses the appointment of a receiver for dissolution of a *corporation. See also Monin v. Monin*, 156 S.W.3d 309, 314 (Ky. App. 2004) (noting that "marshaling of the corporation's assets is best left to the [r]eceiver who is charged with such duty [under KRS 271B.14-320]"). From our review of the record, it appears the arguments below focused more on the brothers' *partnership* than the *corporation*, which may explain the absence of KRS 271B.14-320 from any discussion. We note this distinction, but without additional information about the family farm's business structure and more specific receivership orders, we lack the factual underpinnings to

-10-

On appeal, Joe and Ray argue common law creates a higher burden than exists in the statute. Citing to *Elkhorn Hazard Coal Co. v. Fairchild*, 230 S.W. 61, 64 (Ky. 1921), they assert that instead of merely having to establish the statutory burden of showing "that the property or fund is in danger of being lost, removed or materially injured," Matt and Steve also needed to show the existence of a threat of fraud or injury to Kenson Farms by the current management. However, under these circumstances, we do not agree.

True, evidence of fraud, waste, and mismanagement could support the appointment of a receiver. *See id.* Yet the common law approach to receivership appointments is broader than Joe and Ray's argument suggests. *See* 150 AM. JUR. *Trials* 1 §13 (2017) ("The appointment of a receiver will help maintain the status quo in the action and preserve the property pending the equitable distribution in the underlying divorce action."). Receivers do not operate on behalf of a particular party, but instead are officers of the trial court. *Farmer v. Miller*, 496 S.W.3d 485, 491 (Ky. App. 2016) (citations omitted); CR 66. As pertinent to these particular facts, a court may appoint a receiver for a solvent or insolvent corporation "on the ground of fraud, gross mismanagement or dissension among the stockholders, directors or officers, if there is no other adequate remedy." *Oscar C. Wright Co. v.*

---

utilize KRS 271B.14-320. Therefore, we limit our review to the arguments (and statutes) presented on appeal.

-11-

*Steenman*, 71 S.W.2d 991, 995 (Ky. 1934) (internal quotation marks and citations omitted).  Here, all four brothers agreed that there was dissension among themselves, both sides accused the other of improperly withholding funds and mismanaging proceeds, and mediation was "futile."

Moreover, we are hesitant to accept Joe and Ray's argument that the higher *Fairchild* burden should outweigh the statutory burden considering the *Fairchild* opinion (rendered in 1921) significantly predates the enactment of KRS 425.600 in 1978.  Again, we look at the plain language of the statute, and "we assume that the [General Assembly] meant exactly what it said, and said exactly what it meant."  *Revenue Cabinet v. O'Daniel,* 153 S.W.3d 815, 819 (Ky. 2005) (internal quotation marks and citation omitted).  We may not "guess what the [General Assembly] may have intended but did not express" nor read intention into the statute that is not present.  *Osborne v. Commonwealth*, 185 S.W.3d 645, 648 (Ky. 2006) (citations omitted).  "Also, we presume that the [General Assembly] is aware of the state of the law when it enacts a statute, *including the judicial construction* of prior enactments."[5]  *Maysey*, 620 S.W.3d at 71 (emphasis added) (citing *St. Clair v. Commonwealth*, 140 S.W.3d 510, 570 (Ky. 2004)).  Hence, we must presume the General Assembly was aware of the higher burden caselaw

---

[5] KRS 425.600 did not have prior enactments in the form of a statute, but KRS 425.600(1) is largely consistent with the historic Kentucky Civil Rule 298.  *See Fairchild*, 230 S.W. at 64.

imposed on receivership appointments but chose not to include that higher burden in KRS 425.600.

Thus, in the absence of clear and binding authority to the contrary, we prioritize the plain language of KRS 425.600 and its unambiguous burden. The statute required Matt and Steve to show Kenson Farm's assets were in danger of being lost, removed, or materially injured. KRS 425.600(1). Here, the circuit court determined that admissions of the parties established the statutory need for a receiver, thereby negating the need for an evidentiary hearing. Therefore, on appeal, we look at the admissions of the opposing party to determine if it was an abuse of discretion to find Kenson Farm assets were in danger of being lost, removed, or materially injured.

Joe and Ray accused Matt of embezzling family farm proceeds and Steve of improperly selling farm equipment. Joe and Ray asserted their signatures were forged on legal documents and checks. Joe and Ray, by their own admission, were equal owners/partners with Matt and Steve. Joe and Ray, by their own admission, were prohibiting Matt and Steve from accessing Kenson Farm proceeds and the family farm's primary bank account. Joe and Ray, by their own admission, had no intention of allowing equal management/ownership with Matt and Steve as mediation was not successful and further negotiations would be "futile." Joe and Ray, by their own admission, were keeping two equal-share partners/owners from

the business.  As such, the court's finding that admissions of the parties showed family farm assets were in danger of being lost, removed, or materially injured was not arbitrary, unfair, or unsupported by sound legal principles.

## CONCLUSION

Accordingly, having reviewed the limited record in this case with particular attention to the November 26, 2024 hearing, we perceive no basis for disturbing the orders of the Daviess Circuit Court and AFFIRM the appointment of a receiver for Kenson Farms.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Brian M. Johnson
Andrew L. Sparks
Lexington, Kentucky

BRIEF FOR APPELLEES:

Kevin L. Chlarson
Mark S. Fenzel
Louisville, Kentucky

John David Meyer
Owensboro, Kentucky